UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AMERICAN CLEANERS AND,           )
LAUNDRY CO. INC.,                )
    Plaintiff(s),            )
                                 )
  vs.                          )          Case No. 4:05CV02271 ERW
                                 )
TEXTILE PROCESSORS, SERVICE      )
TRADES, HEALTH CARE,             )
PROFESSIONAL AND TECHNICAL       )
EMPLOYEES INTERNATIONAL UNION    )
LOCAL 161, et al.,               )
    Defendant(s).            )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Trustees of the Local No. 108 Pension

Fund ("108 Fund"), Noel Beasley, Mark Rosen, and Mark Birenbaum, the UNITE HERE

National Retirement Fund ("NRF"), and the Trustees of the National Retirement Fund, Noel

Beasley, Harold Bock, Mark Fleischman, John Gillis, Christine Kerber, David Melman, Warren

Pepicelli, Bruce Raynor, Harris Raynor, Edgar Romney, Richard Rumelt, and Lynn Talbott's

(collectively the "Fund Defendants") Motion to Dismiss [doc. #13], Defendants Textile

Processors, Service Trades, Health Care, Professional and Technical Employees International

Union Local 161 ("Local 161") and Textile Processors, Service Trades, Health Care, Professional

and Technical Employees International Union Local 108 ("Local 108")'s Motion to Dismiss [doc.

#11], Fund Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [doc. #32],

Defendant Local 161's Motion to Dismiss Plaintiff's Second Amended Complaint [doc. #34], and

Defendant Local 108's Motion to Dismiss Defendant's Second Amended Complaint [doc. #36].

## I. PROCEDURAL HISTORY

1

Plaintiff's filed suit against the Fund Defendants, Local 161, and Local 108 on December 2, 2005, alleging four counts against the various defendants, and filed their First Amended Complaint a month later of January 3, 2006.  The Fund Defendants' first motion to dismiss, and the Locals 108 and 161's Joint Motion to Dismiss (docs. #13 and #11 respectively), were filed after the Plaintiff's First Amended Complaint was filed.  On November 20, 2006, this Court allowed the Plaintiff to amend their complaint a second time.  Following the Plaintiff's Second Amended Complaint, the Fund Defendants renewed their arguments asserted in their first motion to dismiss in a second motion to dismiss [doc. #32].  Rather than repeating the claims made in their joint motion to dismiss, Local 161 and Local 108 filed separate Motions to Dismiss [docs. #34 and #36] to address new claims added by the Plaintiff that are unique to Local 108.  Plaintiff's Second Amended Complaint contains seven counts: Count I alleges a violation of 29 U.S.C. § 185; Count II alleges a violation of 29 U.S.C. § 186; Count III alleges common law unjust enrichment against the 108 Fund and the NRF; Count IV alleges Federal Common Law Unjust Enrichment against the 108 Fund and the NRF; Count V alleges Common law unjust enrichment against Local 108; Count VI alleges Federal Common Law unjust enrichment against Local 108; and Count VII alleges Common law conversion against Local 108.  All five motions to dismiss are currently before the Court.[1]

## II.  BACKGROUND FACTS[2]

---

[1]Due to the complexity, the number of Defendants, and the numerous motions to dismiss, the Court will address each motion in isolation.  To the extent that any issues are duplicative the Court will reference the relevant portion of the opinion, rather than repeating the analysis.

[2]As this is a motion to dismiss, all facts alleged in the Plaintiff's Second Amended Complaint are taken as true, and form the basis of this Court's recitation of the facts.

On December 1, 2000, the Plaintiff was required by law to recognize Local 161 as the exclusive collective bargaining representative for a number of its employees, consisting of all permanent full-time cleaning production employees, employed by Plaintiff's St. Louis, Missouri Metro facilities. The Plaintiff and Local 161 entered into a collective bargaining agreement effective December 1, 2000 through November 30, 2003 ("the 2000 agreement"). That agreement required the Plaintiff to contribute five cents per hour worked, for each employee covered by the 2000 agreement, to the Textile Processors Local No. 161 Pension Fund. Effective December 1, 2003 through November 30, 2004, the Plaintiff and Local 161 entered into a second collective bargaining agreement ("the 2003 agreement"), which contained a similar provision. At the time the 2000 agreement was entered into the Textile Processors Local No. 161 Pension Fund did not exist. The Plaintiff was advised by an employee and business agent for Local 161, that the fund would be established, however, no such fund was ever formed. At some point after the execution of the 2000 agreement, the number 161 was lined out, and replaced with the number 108, so that the agreement read "the Company will contribute to the Textile Processors Local No. ~~161~~ 108 Pension Fund. . .." *Pl. Second Amend. Comp.*, ¶25. The Plaintiff also alleges that the initials JM were inserted next to the deletion. It is assumed that JM is intended to refer to Joseph Mach, who is the President and Chief Executive Officer of the Plaintiff company. The Plaintiff further alleges that at no time did any officer or agent, including Joseph Mach, of the Plaintiff company authorize the changes to the 2000 agreement. The Plaintiff became aware of the changes to the 2000 agreement on September 22, 2005.

The Plaintiff refuses to continue making contributions to the 108 Fund, or the NRF[3] with respect to its Local 161 employees. However, the Plaintiff alleges that the Defendants have

---

[3]The Local 108 Fund merged into the NRF, effective April 1, 2005.

ratified and condoned the fraud and forgery noted in the 2000 agreement, and continue to assert the enforceability of the 2000 agreement as altered. The Plaintiff further alleges that the Defendants have claimed potential contribution and withdrawal liability against the Plaintiff based on the presumed enforceability of the altered agreement. Similar alterations were made to the 2003 agreement.

During the term of the 2000 and 2003 agreements, the Plaintiff made all fund contributions, as specified under the terms. These payments were made by the Plaintiff to the Local 108, and were then transmitted by Local 108, to the Local 108 Fund and ultimately into the NRF. The Plaintiff asserts liability against the Local 108 Fund and the NRF, as well as their trustees, as they are third party beneficiaries of the 2000 and 2003 agreements entered into between the Plaintiff and Local 161. Although they are not a party to the collective bargaining agreements, the Plaintiff asserts that they are necessary parties in this lawsuit based on their status as third-party beneficiaries. All of the Plaintiff's claims are based on their potential withdrawal liability under the terms of the agreement, and the allegedly improper contributions to the 108 Fund and the NRF.

## III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The standards governing motions to dismiss are well-settled. A complaint shall not be dismissed for its failure to state a claim upon which relief may be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim entitling him or her to relief. *Breedlove v. Earthgrains Baking,* 140 F.3d 797, 799 (8th Cir. 1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When deciding a motion to dismiss under Rule 12(b)(6), the Court must assume

that all material facts alleged in the complaint are true. *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633 (1999). The court must view all facts and inferences in the light most favorable to the non-moving party and "may dismiss the complaint only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint." *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## IV. DISCUSSION

### A. The Fund Defendants Motion to Dismiss [docs. #13 and #32][4]

There are four counts alleged against the Fund Defendants. Count I alleges that the Fund Defendants breached the 2000 agreement, in violation of Section 301(a) of the labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), by altering the terms of the agreement. Count II alleges that the Fund Defendants unlawfully accepted contributions from the Plaintiff without a written agreement as required by Section 302(c)(5)(B) of the LMRA, 29 U.S.C. § 186(c)(5)(B). Counts III and IV allege Unjust Enrichment, under both state common law, and federal common law of ERISA, due to the Fund Defendants unlawful retention of contributions. The Fund

---

[4]As noted above, the changes in the Plaintiff's Second Amended Complaint do not effect the Fund Defendants' Motion to Dismiss, and therefore document #32, simply references document #13. Document #13, Fund Defendants Motion to Dismiss is denied as moot. The Court will address the Fund Defendants current Motion to Dismiss as Document #32.

Defendants raise a number of arguments, why each of these counts should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), as well as under Federal Rule of Civil Procedure 9(b), for failure to plead fraud with particularity.  The Court will first address each count in turn, and the arguments unique to each count.  The Court will then address the Fund Defendants broad arguments that relate to all four Counts.

### 1.  Count I-Lack of Jurisdiction

The Fund Defendants' first argument is that because they were not a party to the 2000 agreement, they cannot be liable under the Labor Management Relations Act ("LMRA") for the unilateral alteration of the agreement.  The LMRA states, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry effecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties. . .."  29 U.S.C. § 185(a).  This statutory language grants jurisdiction to the district court to hear controversies regarding the violation of a contract between an employer and a labor organization. *Id*.  Therefore, the Fund Defendants first argument is that this Court lacks jurisdiction to hear Count I against the Fund Defendants.  The Plaintiff responds that the Fund Defendants should not be dismissed under Count I because they are indispensable parties under Federal Rule of Civil Procedure 19(a), due to their status as third party beneficiaries under the contract.

The plain language of 29 U.S.C. § 185(a) supports the Fund Defendants position, as they are neither an employer nor a labor organization.  Therefore they are not subject to the jurisdictional provision of that statute. *Id.*  The jurisdictional authority provided by 29 U.S.C. § 185(a), has been interpreted narrowly, and does not give the district court jurisdiction over all disputes arising from a collective bargaining agreement.  The Seventh Circuit specifically held that

"[t]he § 301 [29 U.S.C. § 185] grant of jurisdiction is extremely limited." *Teamsters National Automotive Transporters Industry Negotiating Committee v. Troha*, 328 F.3d 325, 329 (7th Cir. 2003). *See also Textron Lycoming Reciprocating Engine Division, Avco Corp. v. United Automobile, Aerospace and Agricultural Implement Workers of America, International Union*, 523 U.S. 653, 657 (1998) (The Court narrowly interpreted the term "suits for violation of contracts," as "one filed *because a contract has been violated*," (emphasis in original), declining to expend that meaning to allow a court to determine the validity of a contract, unless it is in the context of a suit for breach of contract.). Both the Seventh Circuit, and the Supreme Court opinion support a finding that the language of § 185 is to be narrowly interpreted. As the Fund Defendants are neither an employer nor a labor organization, nor are they parties to the 2000 or 2003 agreements, they are not subject to jurisdiction under this provision.

Although the Fund Defendants are not directly subject to this Court's jurisdiction under the LMRA, 29 U.S.C. § 185(a), the Plaintiff argues that they are subject to this Court's jurisdiction as an indispensable party. Specifically, the Plaintiff argues that it cannot be granted complete relief if the Fund Defendants are not a party. Under Count I of the Plaintiff's Second Amended Complaint, the Plaintiff seeks both declaratory relief and an order that the Fund Defendants repay the Plaintiff all pension fund contributions which were collected, plus interest. Federal Rule of Civil Procedure 19(a) states that

> [a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the persons's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

The question is whether in order for the Plaintiff to receive the relief requested, the fund defendants are a necessary party.

The Plaintiff cites to a number of cases which hold that pension funds are indispensable parties, however, these cases are factually distinguishable as they involve a suit by the collective bargaining organization to compel contributions by the employer. *See e.g. Warshaw v. Local No. 415, International Ladies Garment Workers' Union, AFL-CIO*, 325 F.2d 143, 145 (5th Cir. 1953) (The Court held the trustees to be indispensable parties in "a suit to compel employee payments to the fund."). The argument is well reasoned that a suit by a union against an employer for the non payment of contributions to a fund requires the fund to be joined as an indispensable party as "[t]he judgment . . . could well be res judicata in any future action by the funds to compel payment of the contribution at issue." *Local 538 United Brotherhood of Carpenters and Joiners of America v. United States Fidelity and Guaranty Co.*, 70 F.3d 741, 744 (2nd Cir. 1999). The case at bar, however, involves a suit by the employer for a declaratory judgment against the unions and the funds. Although the facts of the case at bar are distinguishable, the purpose behind Federal Rule 19(a) is to ensure that a resulting judgment will be enforceable. The Plaintiff is seeking the repayment of funds under Count I, as well as a declaration that they are no longer obligated to contribute to the 108 Fund and the NRF. In order for this relief to be granted, the fund defendants are required parties to this case. An order by this Court that the Plaintiff is not required to make contributions to the 108 Fund or the NRF would prevent the Fund Defendants from bringing a later suit for withdrawal liability[5], as the issue would have been previously decided. Therefore, although this Court does not have jurisdiction pursuant to § 185, the Fund defendants are nonetheless indispensable parties.

_____

[5]See § 4, page 15, for a discussion of withdrawal liability under ERISA.

8

## 2.  Count II-Failure to State a Claim

The Plaintiff further alleges in Count II of its Second Amended Complaint, that the Plaintiff made contributions to the Fund Defendants, with the understanding that these contributions were intended "to fund pension benefits and obligations under the Textile Processors Local 161 Pension Fund on behalf of its Local 161 Bargaining Unit employees as described in the 2000 and 2003 Agreements." *Pl. Second Amended Comp.*, ¶ 43.  The Plaintiff asserts that the retention of the contributions by the Fund Defendants violates 29 U.S.C. § 185(c)(5)(B).[6]  The Fund Defendants argue that the 2000 and 2003 agreements constitute a written agreement, even if they were unilaterally altered without the Plaintiff's knowledge. Furthermore, the Fund Defendants argue that even if the 2000 and 2003 agreements are

---

[6] 29 U.S.C. § 186(c)(5)(B) states:

(5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employees making similar payments, and their families and dependants): *Provided*, That. . . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer , and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representative of the of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement.

ineffective to constitute a writing, the writing requirement is satisfied by remittance reports and checks signed by an officer of the Plaintiff Company.

The law is clear that a signed collective bargaining agreement is not necessary to satisfy the writing requirement under 29 U.S.C. § 186(c)(5)(B). *See e.g. Bricklayers Local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 770 (7th Cir. 2004) ("We begin with the proposition that a signed, unexpired collective bargaining agreement between the parties is not required to satisfy section 302(c)(5)(B)." (internal citation omitted)). The agreement, required by the statute, does not have to be a collective bargaining agreement. *Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 460 (6th Cir. 1989). ("Although these writings are not collective bargaining agreements, they sufficiently comport with the writing requirements of LMRA and ERISA at 29 U.S.C. § 186(c)(5)(B) and 29 U.S.C. § 1102(a)(1), respectively. . . .."). The Tenth Circuit specifically held that a fringe benefit monthly remittence report, which the Fund Defendants argue are sufficient in this case, can be the written agreement, sufficient to satisfy the writing requirement in §186(c)(5)(B). *Crouch v. Mo-Kan Iron Workers Welfare Fund*, 740 F.2d 805, 809 n.3 (10th Cir. 1984).

In order for the contributions to the 108 Fund, and subsequently the NRF to be legal under § 186(c)(5)(B), they must have been made pursuant to a written agreement. Although the case law supports the Fund Defendants position, that remittance reports may be the basis of a writing for purposes of § 186(c)(5)(B), it is not appropriate at this stage of the proceedings to determine whether the remittance reports are sufficient to satisfy the writing requirement.[7]

---

[7]The Court notes that the Fund defendants submitted copies of the remittance reports as Exhibit B in support of their motion to dismiss. *Memo. in Support of Fund Defs. Mot. to Dismiss*, Ex. B. As a general rule, "if on a motion for judgment on the pleadings, matters outside

Furthermore, there is an issue of fact regarding the language of the 2000 and 2003 agreements, which cannot be decided on a motion to dismiss. The Plaintiff's have alleged sufficient facts to support a claim for relief under 29 U.S.C. § 186(c)(5)(B). While it is true that the Plaintiff admits to having made contributions to the 108 Fund, these contributions would be unlawful if not done pursuant to a written agreement. Therefore the Fund Defendants motion to dismiss Count II is denied on this basis.

### 3. **Counts III and IV-Failure to State a Claim for Unjust Enrichment**

Count III and IV of Plaintiff's Second Amended Complaint allege unjust enrichment under state and federal common law, respectively. The Fund Defendants raise two arguments in support of their motion to dismiss these two counts. First, they argue that no state common law unjust enrichment claim may lie because it is preempted by ERISA. Second, they argue that the Plaintiff fails to state a claim under federal common law, because they have not alleged any injury. The Plaintiff responds by arguing that an unjust enrichment claim is available under ERISA, and that

---

the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . ..” Fed. R. Civ. P. 12(c). The Fund Defendants argue that the remittance reports are incorporated by reference in the Plaintiff's complaint and therefore fall within an exception to the general rule. Documents outside the pleadings may be considered in deciding a motion to dismiss, without transforming the motion into one for summary judgment, if they are “incorporated into the pleadings by reference.” *Moses.com Securities, Inc. v. Comprehensive Software Systems Inc.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005). However, that case states that the press release in question was specifically mentioned in the pleadings. *Id.* That is not true of the remittance reports referenced by the Fund Defendants. The paragraph cited by the Fund Defendants simply states “Pension Fund contributions paid under the 2000 and 2003 Agreements were transmitted by Local 108 to the 108 Fund and ultimately into the NRF.” *Pl. Second Am. Compl.*, ¶34. Paragraph 35, also cited by the Fund Defendants, is equally unspecific; the only direct reference in that paragraph is to the collective bargaining agreement. *Id.* at ¶35. The Court will look at the collective bargaining agreements as they are specifically referenced by the Plaintiff in the Second Amended Complaint, however, the Court will not look at the remittance reports at this time, as they are not referenced in the Second Amended Complaint, and it is not appropriate to treat the Fund Defendants' motion to dismiss as a motion for summary judgment.

they have successfully pled the elements required. The Plaintiff does not specifically respond to Plaintiffs' argument that the state common law unjust enrichment claim is preempted by ERISA, however, they do address this argument in response to the Union Defendants' Motions to Dismiss, therefore the Court will address that argument here. The Court will address each of the Fund Defendants' arguments in turn.

## I. Count III-State Common Law Unjust Enrichment

As a general rule the Supremacy Clause invalidates state laws that interfere with, or are contrary to, the laws of Congress. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 522 (1981) (citing *Gibbons v. Ogden*, 9 Wheat 1, 211 (1824)). With respect to ERISA, the Supreme Court specifically stated that "Congress intended . . . to establish pension plan regulation as exclusively a federal concern." *Id.* at 523. Furthermore, the language of ERISA specifically states, "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title. . .." 29 U.S.C. § 1144 (emphasis added). This preemption provision has been broadly interpreted; the Eighth Circuit held that "Congress preempted all state laws which relate to employee benefit plans, not only state laws which directly attempt to regulate an area expressly regulated by ERISA." *Dependahi v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215 (8th Cir. 1981); *see also Prudential Ins. Co. of America v. National Park Medical Center*, 154 F.3d 812, 819 (8th Cir. 1998) ("The Supreme Court has variously described the ERISA preemption clause as having a broad scope, and an expansive sweep, and as being broadly worded, deliberately expansive, and conspicuous for its breadth." (Internal quotations and citations omitted)).

Although the scope of ERISA preemption is broad, the "relate to" language used in 29 U.S.C. § 1144 is not entirely clear, and court's have struggled to determine the scope of ERISA preemption. *Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 154 F.3d 812, 818 (8th Cir. 1998). State law is preempted insofar as it relates to any ERISA employee benefit plan. *Id.* (citing 29 U.S.C. § 1144(a)). The Supreme Court has articulated a two part inquiry to determine when a state law is relates to a covered employee benefit plan. *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129 (1992). The Supreme Court held that "ERISA preempts any state law that *refers to* or has a *connection with* covered benefit plans. . . even if the law is not specifically designed to affect such plans, or the effect is only indirect. . .." *Id.* at 129-230 (internal quotation omitted) (emphasis added). "Where a state law acts immediately and exclusively upon ERISA plans. . . or where the existence of ERISA plans is essential to the law's operation. . . that 'reference' will result in pre-emption." *Prudential Ins. Co. of America*, 154 F.3d at 821; *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983). The second prong is more difficult and looks at whether the state law has a connection with covered benefit plans. *District of Columbia*, 506 U.S. at 129. The Eighth Circuit stated that in determining whether a state law is preempted under the connection with prong, the court must look at the objectives of the ERISA statue. *Prudential Ins. Co. of America*, 154 F.3d at 821 ("where there was no "reference to" ERISA in state law, the court's further preemption inquiry was governed by the objectives of the ERISA statute as a guide to what state laws Congress intended to preempt.").

This Court concludes that the Plaintiff's claim of state common law unjust enrichment is preempted by ERISA and therefore must be dismissed. The Court first notes that the state common law unjust enrichment claim does not make a specific reference to ERISA, and therefore

is not preempted under the first prong. *Id.* at 821 ("The California law is indifferent to the funding, and attendant ERISA coverage, of apprenticeship programs. Accordingly, California's prevailing wage statute does not make reference to ERISA plans." (quoting *California Division of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 327 (1997))). Therefore the Court must look at the purpose of ERISA to determine whether the state common law claim is preempted. The Plaintiff is seeking restitution for funds transferred to the Fund Defendants allegedly in violation of ERISA, and therefore under circumstances that are unjust. Despite the limiting language used by the Eighth Circuit in *Prudential Insurance Co. of America*, there is no question that a state law which has a connection with ERISA is preempted by ERISA. 154 F.3d at 821. In the case at bar, the Plaintiff seeks restitution of funds paid to an ERISA pension fund, pursuant to a collective bargaining agreement. Although the Plaintiff attempts to distinguish between the cause of action as one arising out of the collective bargaining agreement and not the ERISA based pension fund, the difference is one without distinction. If the Plaintiff is successful on its claim for unjust enrichment the Fund Defendants would be required to repay money to the Plaintiff, effecting a covered employee benefit plan. This conclusion is supported by the Southern District of New York, which held that plaintiff's complaint contained "allegations such as unjust enrichment, fraud, and conversion[,]" and dismissed all of them "because they have been preempted by ERISA. . .." *District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F.Supp. 1468, 1487 (S.D.N.Y. 1983). Such an action clearly "relate[s] to [an] employee benefit plan" and therefore is preempted by ERISA. *Dependahi*, 653 F.2d at 1215. Count III of Plaintiff's Second Amended Complaint is dismissed for failure to state a claim on which relief may be granted.

### ii. Count IV-Federal Common Law Unjust Enrichment

Count IV asserts a claim for federal common law unjust enrichment. The Eighth Circuit held in *Young America, Inc. v. Union Central Life Insurance Co.*, that "an employer has a federal common law action for restitution of mistakenly made payments to an ERISA plan." 101 F.3d 546, 548 (8th Cir. 1996). The First Circuit reasoned, disallowing a cause of action by an employer for restitution, would allow pension funds to retain overpayments, with no recourse available to the employer. *Kwatcher v. Massachusetts Service Employees Pension Fund*, 879 F.2d 957, 965-966 (1st Cir. 1989). "Since there would be no incentive to return mistaken payments voluntarily, the permissive refund mechanism, 29 U.S.C. § 1103(c)(2)(A), would be like a permanently-shut window: decorative, but of no assistance in letting in a breath of fresh air." *Id.* at 966. The Seventh Circuit, in deciding whether an award of restitution was appropriate for an employer's mistakenly made contributions, determined that because restitution is an equitable remedy, the traditional concerns of equity are to be considered in deciding whether an award is appropriate. *UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of America*, 998 F.2d 509, 513 (7th Cir. 1993).

Whether the equities lie in favor of returning the contributions will require a further analysis of the facts. However, the Plaintiff has alleged that it made overpayments to the Fund Defendants, that the Fund Defendants were obligated to transfer those payments to the Local 161 Pension Fund, and that the Fund Defendants failed to do so. The Court is mindful that at the motion to dismiss stage all reasonable inferences must be made in favor of the Plaintiff, and therefore the Court concludes that the Plaintiff has stated a cause of action for federal common law unjust enrichment, and if successful is entitled to restitution.

### 4. Attempt to Evade ERISA's Arbitration Requirement (Counts I-IV)

The Fund Defendants lastly assert that the Plaintiff's request for Declaratory Relief under Counts I-IV is an attempt to avoid ERISA's arbitration requirement under 29 U.S.C. § 1401(a). The Plaintiff seeks a declaration by this Court that "Plaintiff American Cleaners does not now have, nor has ever had, an obligation to make contributions to the 108 Fund or NRF on behalf of its employees in its Local 161 Bargaining Unit." *Pl. Second Am. Compl.*, ¶41(c). The Plaintiff is concerned that it will be assessed withdrawal liability if it withdraws from the NRF. The Fund Defendants argue that the Plaintiff is asking the Court to adjudicate its rights under ERISA, and that as such, they should be arbitrated.

Under ERISA, "an employer withdrawing from a multiemployer pension plan [is required to] pay a fixed certain debt to the pension plan." *Trustees of Colorado Pipe Industry Pension Trust v. Howard Electrical & Mechanical Inc.*, 909 F.2d 1379, 1383 (10th Cir. 1990). This fixed debt is referred to in the statute as withdrawal liability, and was enacted under the Multiemployer Pension Plan Amendment Act (MPPAA). The withdrawal liability under ERISA is established under 29 U.S.C. § 1381, and states "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." Furthermore, the MPPAA states that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. . .." 29 U.S.C. § 1401(a). The Second Circuit was very clear that this obligation to arbitrate is imposed by Congress, and does not arise from an agreement of the parties. *ILGWU National Retirement Fund v. Levy Brothers Frocks, Inc.*, 846 F.2d 879, 885 (2nd Cir. 1988); *see also Teamsters Pension Trust Fund-Board of Trustees of Western Conference v. Allyn Transportation Co.*, 832 F.2d 502, 505 (9th Cir. 1987) ("The matters to be resolved by

arbitration are not to be determined by the parties' intention, but by the intention of congress."). The Tenth Circuit further stated that "the statute states unambiguously that '*any dispute* between an employer and the plan sponsor. . . concerning a determination made under sections 1381 through 1399. . . shall be resolved through arbitration,' and Congress clearly intended exactly what those words import." *Teamsters Pension Trust Fund*, 832 F.2d at 505-506 (quoting 29 U.S.C. § 1401(a)(1)) (emphasis and alterations in original).

It is clear under the terms of the statute that a suit by a pension fund against an employer for withdrawal liability would be subject to ERISA's arbitration provision. Furthermore, an employer seeking a determination of its contribution requirements under a collective bargaining agreement is also subject to ERISA's arbitration provision. *Philadelphia Journal, Inc. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity* , 1989 WL 45865, *5 (E.D.Pa. 1989) ("The Act specifically requires arbitration of issues involving employer's contractual duties."). The Plaintiff does not dispute the fact that a determination of withdrawal liability, from a Multiemployer Pension Plan, is subject to mandatory arbitration under ERISA, but rather argues that they are seeking a determination of the preliminary question of whether they are an employer, and that such a determination is not subject to arbitration. *Pl. Memo. in Opp. to Fund Defs. Mot. to Dismiss*, p. 6-7 ("While Defendants correctly assert that 29 U.S.C. § 1401 provides for mandatory arbitration of disputes arising out of the calculation of withdrawal liability, they overlook the initial inquiry of whether a party is subject to Section 1401. . . In this case the declaratory judgment sought turns on a determination of whether American is an 'employer' for purposes of Section 1401.").

For a number of reasons, hereafter stated, the Court is not persuaded by Plaintiff's argument that it is not subject to ERISA's arbitration provision because it is seeking a declaration

of its status as an employer. The Plaintiff makes no allegations in its Second Amended Complaint that it is not an employer for purposes of 29 U.S.C. § 1401(a)(1). Rather, the Plaintiff is seeking a declaratory judgment that it is not obligated to contribute to the 108 Fund or the NRF, nor was it obligated to do so at anytime in the past. This determination will directly impact whether the Plaintiff is subject to withdrawal liability under ERISA. Even if the Court were to consider the Plaintiff's argument that it is seeking a declaration that it is not an "employer" within the meaning of the statute, the Plaintiff's argument is not well received. The Eighth Circuit held that there is a narrow exception to the arbitration requirement "for the limited purpose of determining whether it [a company] is an 'employer' within the meaning of section 1401." *Rheem Mfg. Co. v. Central States Southeast and Southwest Areas Pension Fund*, 63 F.3d 703, 705 (8th Cir. 1995). The Court went on to define an employer as "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Id.* (citing *Seaway Port Authority v. Duluth-Superior ILA Marine Ass'n Restated Pension Plan*, 920 F.2d 503, 507 (8th Cir. 1990). The terms of the 2000 and 2003 agreements support the conclusion that the Plaintiff is an employer. The language stated in the Plaintiff's complaint is that "the Company [Plaintiff American Cleaners] will contribute. . . five cents ($.05) per hour worked for each *employee* covered by this collective bargaining agreement." *Pl. Second Amended Complaint*, ¶19. The Plaintiff's complaint alleges not that the Plaintiff was not obligated to make contributions, but that the contributions were to be made to the 161 Pension Fund, not the 108 Fund or the NRF. The Plaintiff was both an employer within the usual meaning of that word, and under the definition provided by the Eighth Circuit, was potentially contractually obligated to make contributions to the plan at issue. The Plaintiff's potential liability under the 2000 and 2003 agreements is at issue, not the Plaintiff's status as an employer. Therefore Count I is dismissed

based on 29 U.S.C. § 1401(a)(1)'s mandatory arbitration provision. The relief the Plaintiff seeks can be obtained through arbitration of its withdrawal liability, and therefore Count I, in its entirety, is dismissed against the Fund Defendants.

The Court must still decide whether ERISA's arbitration provision also requires the dismissal of Count II of Plaintiff's Second Amended Complaint, for the same reasons this Court dismissed Count I against the Fund Defendants. Although Count II alleges a violation of 29 U.S.C. § 186(c)(5)(B), and does not specifically seek an assessment of withdrawal liability, such a determination necessarily leads to a determination of the Plaintiff's withdrawal liability. In fact, the specific declaratory relief sought by the Plaintiff, under both Count I and Count II, is whether the Plaintiff is subject to withdrawal liability if it fails to contribute to the 108 Fund and the NRF. Therefore the same analysis the Court conducted in relation to Count I is applicable to Count II, and Count II should be dismissed as it is required to be arbitrated under ERISA.

### 5. Failure to Plead Fraud with Particularity (Counts I-IV)

The Fund Defendants' also argue that all four Counts should be dismissed for failure to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).[8] However, the only count remaining is Count IV for federal common law unjust enrichment, Counts I and II are dismissed because they are subject to arbitration under ERISA, and Count III is dismissed for failure to state a claim, therefore the fraud argument need not be addressed as to those Counts. It is also unnecessary to address this argument in relation to Count IV in great detail. The premise of Plaintiff's argument under Count IV is that the Fund Defendants received contributions that were improper under the terms of the 2000 and 2003 agreement, and therefore such contributions

---

[8] Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting a fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

should be subject to restitution. In order for the Plaintiff to prevail on this Count, it is not necessary that it prove fraud, only that the circumstances surrounding the retention of such funds is unjust. Therefore Count IV against the Fund Defendants is not dismissed.

**B. Local 161's Motion to Dismiss [doc. #34]**[9]

The Plaintiff's Second Amended Complaint raises two counts against Local 161, Count I alleges a violation of the 2000 and 2003 agreements, Count II alleges a violation of 29 U.S.C. § 186(c)(5)(B).

### 1. Count I-Lack of Jurisdiction

Count I alleges that the Defendants violated the 2000 and 2003 agreements by changing the terms to provide for contributions to the 108 Fund instead of the Local 161 Pension Fund, and that this Court has jurisdiction under 29 U.S.C. § 185(a). Local 161 raises three arguments for dismissing Count I. First, that Count I is subject to ERISA's mandatory arbitration provision, second, that this Court lacks jurisdiction, and third, that Count I is subject to arbitration under the terms of the contract. The Court will address each argument in turn.

In order to satisfy the case or controversy requirement found in Article III of the United States Constitution, the Plaintiff states that "the NRF Trustees and the 108 Fund Trustees have advised Plaintiff American Cleaners of their determination that, based upon the forged and unilaterally altered provisions of the 2000 Agreement, Plaintiff American Cleaners is at risk of an assessment of withdrawal liability to the NRF and/or the 108 Fund under ERISA, 20 U.S.C. §§ 1381, 1383, 1391, *et seq.*" *Pl. Second Amended Complaint*, ¶40(d). Although, the concern over

---

[9]The Court will not address Defendants Local 161 and Local 108's Joint Motion to Dismiss the First Amended Complaint [doc. #11], but rather will address all arguments in the context of the separate motions to dismiss filed in response to the Plaintiff's Second Amended Complaint.

withdrawal liability is the driving force behind the Plaintiff's suit, the same analysis used above in dismissing Count I against the Fund Defendants, is not equally applicable to Local 161. ERISA's mandatory arbitration provision, states that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. . .." 29 U.S.C. § 1401(a). However, Local 161 is not the plan sponsor, but rather the collective bargaining agent, and therefore, by the plain language of 29 U.S.C. § 1401(a), is not subject to that provision.

Section 185(a) of the LMRA states, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry effecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties. . .." 29 U.S.C. § 185(a). As stated above, the jurisdictional authority provided by 29 U.S.C. § 185(a), has been interpreted narrowly, and does not give the district court jurisdiction over every dispute arising from a collective bargaining agreement. The Seventh Circuit specifically held that "[t]he § 301 [29 U.S.C. § 185] grant of jurisdiction is extremely limited." *Teamsters National Automotive Transporters Industry Negotiating Committee v. Troha*, 328 F.3d 325, 329 (7th Cir. 2003). The Supreme Court is very clear in its interpretation of this jurisdictional provision of the LMRA. The Court has jurisdiction over a suit "filed *because a contract has been violated. . ..*" *Textron Lycoming Reciprocating Engine Division, Avco Corp.*, 523 U.S. at 657 (emphasis in original). The Court further stated that "'[s]uits for violation of contracts' under § 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated." *Id.*

Local 161's argument is distinct from the Fund Defendants argument addressed above; the Fund Defendants argued lack of subject matter jurisdiction because they were not a party to the

21

2000 and 2003 agreements. Local 161 argues that the Plaintiff does not aver a breach of contract, resulting in a lack of subject matter jurisdiction. *Memo. in Support of Local 161's Mot. to Dismiss*, p. 6. Specifically, Local 161 states in its brief "Local 161 is only arguing that the facts as asserted by the Plaintiff fail to make a prima facie case for breach in that they do not allege Local 161 has failed to perform any of its obligations under either of its collective-bargaining agreements with the Plaintiff. The Plaintiff responds that it is seeking a declaratory judgment, which requires this court to interpret the 2000 and 2003 agreements, and therefore is properly brought under 29 U.S.C. § 185(a). Furthermore, the Plaintiff argues that such unilateral alteration of the agreements violates the covenant of good faith and fair dealing which is implied in all contracts.

The Plaintiff alleges that contributions were made to the 108 Fund and NRF in contravention of the 2000 and 2003 agreements. Although the Plaintiff's action is in the form of a request for declaratory relief, this does not change the underlying nature of the suit. The Plaintiff is seeking to prevent a suit for withdrawal liability for failing to make contributions under the 2000 and 2003 agreements. Therefore the Plaintiff has satisfied the jurisdictional provision found in 29 U.S.C. § 185(a). As this Court discussed above, the Union could bring a suit against the employer for failing to make such contributions in accordance with the 2000 and 2003 agreements, therefore, this Court has jurisdiction to hear the action, as it is one for breach of contract against Local 161.

It is therefore necessary to address Local 161's third argument, that Count I is subject to arbitration under the terms of the 2000 and 2003 agreements. The 2000 agreement provides a number of steps that each party is to take in the event of a grievance between the parties, with the final step providing that "[i]f the grievance is not settled within five (5) working days after

presentation at the last preceding Step, either party may request arbitration of said grievance by sending the other party written notice of its desire to arbitrate the grievance." *Def. Memo. in Support of Def. Local 161's Mot. To Dismiss*, Ex. A. The Plaintiff argues that the contract provision referenced by Local 161, provides for either party to seek arbitration after the first two steps, in a three step grievance procedure, have been completed, beginning with a complaint by a union representative or an employee. Specifically the Plaintiff argues that the complaint alleged in this Court is not subject to the arbitration provision, because the Plaintiff, as employer, could not have filed a grievance in accordance with step one of the procedure set forth in the 2000 agreement.

Both the Supreme Court and the Eighth Circuit have been consistent in enforcing arbitration provisions in collective bargaining agreements. The Eighth Circuit held that "when an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute." *Teamsters Local Union No. 688 v. Industrial Wire Products, Inc.*, 186 F.3d 878, 880 (8th Cir. 1999); *see also AT & T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 ("where the contract contains an arbitration clause, there is a presumption of arbitrability. . ..."). Any doubts regarding the coverage of an arbitration provision "should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior &Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Laundry, Dry Cleaning and Dye House Workers International Union, Local 93, of Springfield, Missouri v. Mahoney*, 491 F.2d 1029, 1032 (8th Cir. 1974). Furthermore, the Eighth Circuit states that "[c]omplete effectuation of federal policy is achieved when the agreement contains

both an arbitration provision for all unresolved grievances and an absolute prohibition of strikes, the arbitration agreement being the 'quid pro quo' for the agreement not to strike." *Id.* at 1033. The question left for the Court to decide in the case at bar is not whether an arbitration clause generally is enforceable, as it unquestionably is, nor whether the arbitration clause in the 2000 agreement is valid, but rather whether the specific arbitration clause is applicable to the dispute raised under Count I of the Plaintiff's Second Amended Complaint.

The Eighth Circuit held in *Laundry, Dry Cleaning and Dye House Workers International*, that an arbitration clause, which referred to employee grievances, was susceptible to an interpretation that covered the asserted dispute by the employer, despite the fact that the arbitration clause spoke of employee grievances only.   491 F.2d at 1032.  The Eighth Circuit reached this conclusion based on the purpose clause of the agreement which stated "the agreement is intended to provide procedures for the equitable adjustment of all grievances and disputes arising between the Employer and the Union." *Id.*  A district court in the Second Circuit stated that "the Second Circuit has repeatedly relied on the presumption of arbitrability to find that arbitration clauses, which are arguably geared toward employee grievances, also allow employer-initiated disputes to go to arbitration." *Pathmark Stores, Inc. v. United Food and Commercial Workers Local 342-50, AFL-CIO*, 204 F.Supp.2d 500, 503 (E.D.N.Y. 2002).

The agreement in the case at bar is less clear than that interpreted by the Eighth Circuit in *Laundry, Dry Cleaning and Dye House Workers International*, it simply states "[i]n the event any differences or grievances arise during the operation of this Agreement, there shall be no suspension of work but said grievance shall be settled in the following manner. . .."  As stated by the Eighth Circuit, arbitration clauses are the quid pro quo for a no strike agreement.  The Contract language at issue specifically states that there shall be no stoppage of work.

Furthermore, the Eighth Circuit has upheld the application of an employee grievance provision to a grievance initiated by the employer. The Court concludes that the arbitration provision was intended to cover all grievances, not only those raised by employees, and that there is no express provision excluding the subject of the present grievance from arbitration. Therefore, Count I against Local 161 is subject to arbitration under the terms of the 2000 and 2003 agreements.

### 2. Count II-Failure to State a Claim

Local 161 argues that in order to state a cause of action for violation of 29 U.S.C. § 186(c)(5)(B), the Plaintiff must allege that it received something of value from the employer, without a written agreement as mandated by § 186(c)(5)(B). Local 161 argues that they never received a thing of value and therefore no violation occurred, rather all contributions were made to the 108 Fund and the NRF. The Plaintiff's only response is that Local 161 and Local 108 have, throughout their relationship with Plaintiff, intermingled their affairs to such an extent that the Plaintiff cannot distinguish the two entities. *Pl. Response in Opp. to Def. Local 161's Mot. to Dismiss*, 4.

29 U.S.C. § 186(c)(5)(B), set forth in footnote six above, provides a writing requirement in order for an employer to transfer money to a pension fund, which is an exception to the general rule, that an employer may not transfer money to employees, their representatives, or labor organizations. 29 U.S.C. § 186(a) ("[i]t shall be unlawful for any employer. . . to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value. . . (1) to any representative of any of his employees who are employed in an industry affecting commerce; or (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry effecting commerce. . . ."). The Second Circuit interpreted this language

as referencing "tangible items or at least valuable services or entitlements." *U.S. v. Cervone*, 907 F.2d 332, 347 (2nd Cir. 1990).

A useful case for comparison is the Supreme Court's decision in *U.S. v. Fruehauf*. 365 U.S. 146, 155 (1961). In that case, the Supreme Court, in dicta, listed a number of theories that the government could have used in prosecuting an employer for violation of the § 186(a)'s prohibition on transferring funds, in order to secure an indictment. *Id.* In that case the employer had loaned $200,000.00 to an employee representative, which was paid back with interest. *Id.* The Court did not ultimately address whether this transaction was within the statutory language of "a thing of value," however, the implication was that some theory could have been suggested in order to secure the indictment. *Id.* ("[P]utting aside of course all questions of variance between indictment and proof that might emerge at a trial, seemingly the Government might have attempted to make out violations of s 302 [§ 186] on any of a number of alternative theories. . .."). In the case at bar, the Plaintiff may have been able to provide an allegation, sufficient to survive a motion to dismiss, however, they have failed to do so. The only allegations in the Second Amended Complaint, are that payments were made to the 108 Fund and the NRF. In its briefing, the Plaintiff argues that Local 161 was so intertwined with Local 108, that any benefit given to the 108 Fund was equally beneficial to Local 161. This argument is not persuasive, nor is it supported by any factual allegations in the Second Amended Complaint. The Plaintiff has not alleged any facts to show that Local 108 and Local 161 were so intertwined, that they constituted a single entity. Furthermore, the payments were made to the trust fund, not to the union, and as the Western District of Missouri held, the trust fund "may directly enforce this obligation [of the employer to make payments] by a court action. . .." *Mo-Kan Iron Workers Pension Fund v. Challenger Fence Co., Inc.*, 426 F.Supp.2d 1001,1006 (W.D.Mo. 2006). Therefore the benefit,

or the cause of action, for enforcement of an agreement to make contributions to a pension fund, lies with the pension fund. Such payments do not provide a benefit to the union; in this case neither Local 161 nor Local 108 received such a benefit.

The Court concludes that the Plaintiff has failed to state a claim under 29 U.S.C. § 186(c)(5)(B) against Local 161. There is no allegation that Local 161 received any money or thing of value from the Plaintiff. It is unnecessary to address Local 161's alternative argument, that there are sufficient writings to satisfy the writing requirement of § 186(c)(5)(B). Therefore Count II against Local 161 is dismissed for failure to state a claim.

Local 161's final argument is that both Counts should be dismissed because the Plaintiff has failed to plead fraud with particularity. However, as the Court has determined, since Count I is dismissed because it is subject to the contract's arbitration provision, and Count II fails to state a claim against Local 161, it is not necessary to address the fraud argument.

### C. Local 108's Motion to Dismiss [doc. #36]

The Plaintiff's Second Amended Complaint alleges five causes of action against Defendant Local 108 ("Local 108"): Count 1 seeks a declaratory judgment for violation of the 2000 and 2003 agreements; Count II seeks a declaratory judgment that no payments are owed to the 108 Fund or NRF based on an alleged violation of 29 U.S.C. § 185(c)(5)(B); Count V alleges state common law unjust enrichment by Local 108; Count VI alleges federal common law unjust enrichment by Local 108 under ERISA; and Count VII alleges common law conversion against Local 108. Local 108 seeks to dismiss all five counts, either under Rule 12(b)(6) for failure to state a claim, or alternately under Rule 12(b)(1) for a lack of federal subject matter jurisdiction. The Court will address each argument in turn.

### 1. Count I-Lack of Jurisdiction

Local 108's first argument mirrors that of the Fund Defendants raised above; that they are not a party to either the 2000 or the 2003 agreements, and therefore cannot be liable for a breach of that agreement. Section IV.A.1 of this opinion states that the Fund Defendants are not a party to the 2000 and 2003 agreements, and therefore do not fall within the narrow jurisdictional provision of 29 U.S.C. § 185(a); the same analysis is applicable here. The agreements were between Local 161 and the Plaintiff; Local 108 was not a party to that agreement and therefore the Court does not have jurisdiction to hear the present suit on this Count. Furthermore, unlike the Fund Defendants above, Local 108 is not an indispensable party, as they are not the ones who will be obligated to return contributions to the Plaintiff in the event that the Plaintiff receives a ruling in its favor, against Local 161. Therefore Count I against Local 108 is dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### 2. Count II-Failure to State a Claim

This Count against Local 108 raises the same arguments made by Local 161; that no money or thing of value was transferred to Local 108, and therefore any claim under 29 U.S.C. § 186(a) must fail. The Court agrees with Local 108, and Local 161, that the Plaintiff has not alleged that any thing of value was transferred to either union, but rather all transfers were made to the 108 Fund and the NRF. The Plaintiff's allegations state that Local 108 transferred checks to the 108 Fund from the Plaintiff. However, assuming that these allegations are true, the momentary receipt of a check before forwarding it to the funds is insufficient to constitute a thing of value. All value was received by the funds. Therefore, under Federal Rule of Civil Procedure 12(b)(6), Count II of the Plaintiff's Second Amended Complaint against Local 108 is dismissed for failure to state a claim on which relief can be granted.

### 3. Counts V, VI, and VII-Common Law Claims against Local 108

Under Counts V, VI, and VII, the Plaintiff alleges state common law unjust enrichment, federal common law unjust enrichment and common law conversion. The basis for all three of these claims is Local 108's role in transferring payments from the Plaintiff to the 108 Fund and the NRF. The benefit allegedly received for the claim of unjust enrichment is the receipt of funds that were intended for deposit in the Local 161 Pension Fund. The alleged conversion is based on the same set of facts; Local 108's alleged exercise of control over the amounts paid to it for the benefit of the Local 161 Pension Fund. As articulated above, a common law claim for unjust enrichment is preempted by ERISA, and therefore Local 108's motion to dismiss Count V of the Plaintiff's Second Amended Complaint is granted. The Court will now address the Plaintiff's allegations under Count VI and VII, to determine whether the Plaintiff has stated a claim upon which relief can be granted.

The discussion of federal common law unjust enrichment under ERISA requires a distinct analysis in relation to Local 108, from that discussed above for the Fund Defendants. The Court concluded that the Fund Defendant's motion to dismiss Count IV should be denied, because the Plaintiff had alleged that the funds had received contributions for which they were not entitled to receive. The Court will not repeat the case law cited above which led this Court to concluded that a cause of action may lie for restitution under federal common law of ERISA. However, in order for their to be an action for restitution, the Defendant must have received some benefit for which restitution is the appropriate remedy. The Plaintiff has failed to satisfy this requirement against Local 108. The Second Amended Complaint alleges only that Local 108 transferred checks, that were payable to the 108 Fund and the NRF, from the Plaintiff to the Fund Defendants. There was no benefit received by Local 108, as they did not retain any of the

contributions. Count VI, for violation of federal common law unjust enrichment is dismissed for failure to state a claim under Rule 12(b)(6).

The Plaintiff's seventh, and final, cause of action alleges common law conversion against Local 108. The same rule that the Court applied to the Fund Defendants' motion to dismiss, and Local 108's motion to dismiss the Plaintiff's claims of unjust enrichment, is applicable to the Plaintiff's common law conversion claim. State law is preempted by ERISA "insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title. . .." 29 U.S.C. § 1144. The Southern District of New York held that Plaintiff's Complaint contained "allegations such as unjust enrichment, fraud, and conversion[,]" and dismissed all of them "because they have been preempted by ERISA. . .." *District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F.Supp. 1468, 1487 (S.D.N.Y. 1983). The analysis employed above for the Fund Defendants state common law unjust enrichment claim applies with equal force to the Plaintiff's conversion claim against Local 108. Therefore, Count VII is dismissed for failure to state a claim under Rule 12(b)(6), as it is preempted by ERISA.

## V. CONCLUSION

This Court concludes that the Fund Defendants Motion to Dismiss is granted as to Count I and Count II, as both claims are subject to ERISA's mandatory arbitration provisions. The Fund Defendants' motion is also granted as to Count III as state common law unjust enrichment claims are preempted by ERISA. Lastly, the Fund Defendants' motion is denied as to Count IV, as the Plaintiff has successfully stated a cause of action for federal common law unjust enrichment.

Local 161's motion to dismiss is granted in full. Although this Court has jurisdiction over Count I under ERISA, 29 U.S.C. § 185(a), the 2000 and 2003 agreements mandate that this

dispute be arbitrated, therefore Count I is dismissed. Count II requires a showing that a thing of value was given to Local 161, and no such allegation was made, therefore Count II is dismissed for failure to state a claim on which relief can be granted. Lastly, the Court considered Local 108's motion to dismiss. Local 108's motion is also granted in full. Count I is dismissed because Local 108 is not a party to either the 2000 or 2003 agreement. Count II of Plaintiff's complaint fails to allege that Local 108 received a thing of value from the Plaintiff and therefore does not state a cause of action. Count V's allegations of state unjust enrichment are preempted by ERISA and therefore must be dismissed. Count VI alleges federal common law unjust enrichment, however, no allegations were made that Local 108 received anything from the Plaintiff which could be subject to an order of restitution. Finally, Count VII fails for the same reason as Count V, it is preempted by ERISA.

The only claim remaining before this court is the Plaintiff's allegation under Count IV against the Fund Defendants for federal common law unjust enrichment. All other counts are dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Local 161 and Local 108's Motion to Dismiss [doc. #11] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that the Fund Defendants' Motion to Dismiss the Complaint [doc. #13] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that the Fund Defendants' Motion to Dismiss the Second Amended Complaint [doc. #32] is **GRANTED in part and DENIED in part.** It is **GRANTED** as to Count I, II, and III, **DENIED** as to Count IV.

**IT IS FURTHER ORDERED** that Defendant Local 161's Motion to Dismiss Plaintiff's Second Amended Complaint [doc. #34] is **GRANTED**.  All claims against Local 161 are dismissed.

**IT IS FURTHER ORDERED** that Defendant Local 108's Motion to Dismiss Plaintiff's Second Amended Complaint [doc. #36] is **GRANTED**.  All claims against Defendant Local 108 are dismissed.

Dated this <u>20th</u> Day of <u>March</u>, 2007.


_____

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE